# Federal Defenders
## OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

October 23, 2020

<u>VIA ECF & EMAIL</u>

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    <u>United States v. Noe Angel Soriano Cruz, 20-cr-49 (RJD)</u>

Dear Judge Dearie:

I write on behalf of defendant Noe Angel Soriano Cruz in anticipation of sentencing, which is scheduled for November 9, 2020. Mr. Soriano Cruz pleaded guilty to one count of illegal reentry, in violation of 8 U.S.C. § 1326(a) & (b)(1), and faces a guidelines range of 18-24 months' imprisonment. For the reasons set forth below, we respectfully request that the Court impose a sentence of time-served.

We have no substantive objections to the presentence investigation report, which correctly calculates Mr. Soriano Cruz's guidelines range and states the details of his life.[1] Although this is his second illegal reentry conviction, and the PSR and Probation Department's sentencing recommendation suggest that this is a heartland case, it is not. The circumstances of Mr. Soriano Cruz's imprisonment during the COVID-19 pandemic have been harsh and far more punitive than pretrial detention or post-judgment incarceration should be, especially for a defendant who poses no discipline problems or any other kind of threat in custody. Given the difficult circumstances of his detention and the likely additional time he will be imprisoned under similar conditions while awaiting removal to Mexico, a downward variance of time-served is sufficient, but not greater than necessary, to achieve the relevant ends of sentencing. *See* 18 U.S.C. § 3553(a)(1).

Mr. Soriano Cruz was born and raised in deep poverty in a rural area in Oaxaca, Mexico. PSR ¶ 43. The first ten years of his life were spent in a farming village where he had no electricity or running water. His father left the family when he was six. From a very young age, Mr. Soriano Cruz had to support his family by cutting wood, working as a messenger, and harvesting crops in the fields. Mr. Soriano Cruz was too poor, and his family too dependent on his labor, to attend school regularly. *Id.* When he was ten, he moved to Mexico City with his

---

[1] The only corrections we offer are to the PSR are to paragraph 2, which should state that Mr. Soriano Cruz pleaded guilty pursuant to a plea agreement, and to paragraph 8, which, based on information and belief, should state that Mr. Soriano Cruz's sentences ran consecutively, not concurrently, which is why he spent more than a year in state custody between October 2018 and February 2020 on his two Queens convictions.

mother and siblings to find a better life. While their conditions marginally improved, they were still very difficult. Mr. Soriano Cruz continued to have to work, despite his tender age, and he and his family members all took whatever low-paying jobs they could find in their impoverished neighborhood. PSR ¶ 44. As a result, he continued to attend school sporadically, and never entered high school. *Id.* While life in Mexico City was somewhat better than before, in that he had access to utilities and a somewhat higher earning potential, his future remained bleak.

The dire circumstances of Mr. Soriano Cruz's life led him to the United States when he was still a boy. At 14 years of age, he trekked from Mexico City to Naples, Florida, in search of a better life and economic opportunity. PSR ¶ 45. This was the beginning of Mr. Soriano Cruz's pattern of migration between the two countries over the next 25 years. It was also the beginning of the immigration violations that bring him before the Court in this case.

The PSR fully sets forth Mr. Soriano Cruz's immigration and criminal history. PSR ¶¶ 3-8, 25-31. Although we will not repeat the details of it here, the PSR shows that he has moved between Mexico and the United States for the last 25 years without permission from the American government, and that he has committed several local crimes unrelated to immigration, to which he pleaded guilty and served his punishments without incident. Indeed, before he was detained by federal authorities for this offense, Mr. Soriano Cruz had served approximately 16 months on Rikers Island for two local offenses. The PSR also shows that he crossed the border for reasons that are understandable, even if they are not legally excusable or defensible.

Mr. Soriano Cruz came to the United States repeatedly, and despite the risk of deportation, to seek economic opportunity and to be with or near his children living in the country. Mr. Soriano Cruz worked in the United States in various capacities: as a baker, a sandwich preparer, a cheesemaker, in retail, and in landscaping and construction. PSR ¶¶ 66-73. Although those positions may seem common and not especially lucrative, they offered much more money than he ever could have hoped to gain doing similar labor at home.

Mr. Soriano Cruz used his earnings to support his family in Mexico. PSR ¶ 46. His mother, father, and sister all describe in their letters, attached as Exhibits A-C,[2] how Mr. Soriano Cruz regularly sent them money and how much they benefitted from his financial generosity. For example, he helped pay for his mother's medical care, which included gall-bladder surgery, as well as his father's medications. *See* Exs. A, C. And he helped his family buy two properties in Oaxaca: a parcel for farming and a plot where he built a house that had all of the basic amenities he lacked as a child. PSR ¶ 76; Exs. B & C. This property will provide his family the sanctuary they never had and a modicum economic security for the rest of their lives.

His family continues to love and care for him, and they want their son and brother to return to Mexico as soon as possible to reunite with them. As his mother, Maria, writes: "I understand that he's going to be deported, and I'm waiting for him. I want to see him. I cannot wait to see him together with his siblings. We miss him. I've had a hard time talking to him lately because of what's been happening with Covid, but he's talked to his sister, and I'm anxious to hear from him. I'm excited to have my son back with me." Ex. A. His sister, Socorro,

---

[2] The exhibits are English translations by our office of letters that Mr. Soriano Cruz's mother, Maria Cruz, father, Ramon Soriano Tapia, and sister, Socorro Soriano Cruz emailed our office.

echoes that desire: "Right now, I'm the only one working to help provide for our parents, and I'm currently the primary caregiver for our mother. Our father just recently recovered from Covid-19, so it has been a hard couple of months due to Noe's incarceration. We are awaiting his return, judge, and hope that you can find it in your heart to help get my brother back to us as soon as possible." Ex. C.

Over the course of his time in America, Mr. Soriano Cruz also had relationships with two women and fathered three children: Abigail and Angel, who live in Florida, and Ramon, who lives in New York City. PSR ¶¶ 47-48. He has not seen Abigail and Angel for several years, and has not seen his son, Ramon, since his federal arrest in this case, although he does try and maintain contact with them by telephone from custody. Before his arrest on local charges in October 2018, he supported his children with financial payments to their mothers. *Id.* He accepts, with profound regret, that because he has no lawful status in the United States, he is unlikely ever to see his American children unless they visit him in Mexico.

Mr. Soriano Cruz understands that he cannot come to this country again — not only legally, but as a practical matter. He knows that if he returns, he can expect to be arrested, prosecuted, and imprisoned for an even longer period, during which time he will be unable to earn any money to support his family and will be extremely limited in his ability to communicate with and see his family. The house he has nearly completed in Oaxaca for his family is now near completion, and he intends to return there after being deported. PSR ¶ 76; Exs. A-C. He is, as his sister Socorro notes, now 40 years old and too weary for the journey across the southern border and the constant tension of living in the shadows in America. Ex. C. Further, he is now sufficiently financially secure to subsist in Mexico and support himself and his family there. He no longer has the same economic incentive to return to the United States, nor the vigor to withstand the physical and mental hardships that another unlawful border crossing would entail.

Certainly, he lacks the will to return to the United States if he stands to face anything like what his current period of federal imprisonment has involved. For the majority of the nine months Mr. Soriano Cruz will have served by the time of sentencing, he has lived in constant fear that the novel coronavirus will be introduced into the MDC. Moreover, has been subject to strict restrictions, imposed to prevent the virus's transmission, that have drastically curtailed his movement in jail and ability to communicate with family and counsel. This experience has been searing. These months will stay with Mr. Soriano Cruz for the rest of his life, and will be a painful reminder of what could be in store if he ever returns to the United States.

Since the COVID-19 pandemic struck, Mr. Soriano Cruz has been held in quasi-isolation at the Metropolitan Detention Center. On March 13, 2020, the MDC terminated all visitation at the MDC, including legal visits, to prevent the spread of COVID-19. Then, on April 1, 2020, the Bureau of Prisons instituted a nationwide lockdown of all its facilities, including the MDC, to stanch the transmission of the virus — which, as this Court is well aware, has spread through the BOP's facilities at a rate much higher than in the American public. *See, e.g.*, *United States v. Lockhart*, 2020 WL 4333010, at *2 (E.D.N.Y. July 29, 2020) (finding that "rate of infection in the Bureau of Prisons is almost six times higher than the national average"). For the month of April, Mr. Soriano Cruz was only allowed out of his cell for 30 minutes a day, three times a week. In May, that period of time was extended to one hour, and, on May 20, the MDC

permitted him and other inmates to leave their cells three hours a day, several days a week.[3] Those times out of his cell are Mr. Soriano Cruz's only opportunity to call his family, engage in any recreation or socializing, and shower.

These COVID-19 restrictions have persisted for months and remain in effect today. Since May 20, Mr. Soriano Cruz has been locked in his cell 24 hours a day, except for those days when he has been allowed out for up to three hours at a time. These are conditions on par with solitary confinement — except, of course, Mr. Soriano Cruz is not by himself, but must share his tiny cell with another stranger, which exacerbates the psychological challenges of the lockdown. These restrictions exceed the reasonable expectation of the deprivations of liberty during pretrial detention. Further, they have no end in sight, especially as COVID-19 rates of infection continue to rise nationally, *see* https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last visited Oct. 21, 2020), and the Bureau of Prisons continues its efforts to stem the virus's transmission inside its facilities. Thus, any additional imprisonment will consign Mr. Soriano Cruz to these same conditions, perhaps until his sentence is complete.

Being incarcerated during this extended period of lockdown has affected Mr. Soriano Cruz deeply. Although he has spent time in prison before, he has never experienced restrictions like what he has endured for the last seven-plus months. When he leaves custody, his ordeal will be the memory of prison he takes with him. This time incarcerated will provide an abnormally strong deterrent for him. And, for purposes of just punishment, it will have been a significantly more punitive sentence than the equivalent amount of time in a normal detention setting.

In recognition that these COVID-19 conditions were exceeding punitive, judges in this and the Southern District have granted substantial downward departures in similar or even more serious cases. Indeed, because the unusual harshness of jail during the pandemic diminishes the retributive and deterrent need for a guidelines-length sentences, judges have imposed terms of imprisonment — including time-served sentences — that are less than half of the bottom of the defendants' advisory ranges. *E.g.*, *United States v. Piper*, No. 18-cr-008 (AMD) (E.D.N.Y. June 25, 2020) (departing downwardly 75% in child pornography case and imposing time-served sentence); *United States v. Vinas*, No. 20-cr-44 (EK) (departing downwardly 63% in escape case) (E.D.N.Y. Apr. 20, 2020); *United States v. Hendryx*, No. 18-cr-478 (ENV) (E.D.N.Y. May 22, 2020) (departing downwardly 25% from bottom of guidelines range in felon-in-possession case); *see also, e.g.*, *United States v. Cirino*, No. 19-cr-323 (JSR) (S.D.N.Y. July 21, 2020) (departing downwardly 83% in Hobbs Act robbery case); *United States v. Aracena de Jesus*, No. 20-cr-19 (PAE) (departing downwardly 77% in illegal reentry case and imposing time-served sentence); *United States v. Casillas*, No. 19-cr-836 (S.D.N.Y. June 2, 2020) (departing downwardly 60% in illegal reentry case and imposing time-served sentence); *United States v. Polanco*, No. 20-cr-94 (AJN) (S.D.N.Y. May 15, 2020) (departing downwardly 60% in illegal reentry case and imposing time-served sentence); *United States v. Garcia*, No. 20-cr-27 (JGK) (S.D.N.Y. July 17, 2020) (departing downwardly 30% in illegal reentry case and imposing time-served sentence).

The Court should impose a similar sentence here. The draconian conditions of Mr. Soriano Cruz's confinement, which have been in effect for the vast majority of his time in

---

[3] The schedule has fluctuated over the last several months: at times, inmates have been allowed out of their cells five to six days a week; at others, they have been allowed out every other day.

United States v. Soriano Cruz, No. 20-cr-49 (RJD)
October 23, 2020

federal pretrial detention, deserve great mitigating weight. Indeed, they merit a time-served
sentence — effectively, nine months' incarceration, or half of what the guidelines recommend.
This is the sentence that is sufficient, but not greater than necessary, to afford just punishment
and specific and general deterrence. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). And it is in keeping with
the downward variances that judges in this and the Southern District have granted for defendants
in similar cases who lived through the same prolonged lockdown. *See id.* § 3553(a)(6).

If the ongoing lockdown restrictions were not enough, a time-served sentence is further
justified by the additional detention that Mr. Soriano Cruz can expect after he finishes his
sentence and awaits deportation. *See, e.g.*, *United States v. Johnson*, No. 19-cr-523 (ERK)
(E.D.N.Y. July 27, 2020) (granting sentence of time-served based in part on defendant's
probable detention while awaiting removal post-sentencing); *United States v. Temoxtle-
Alvarado*, No. 18-cr-340 (ARR) (E.D.N.Y. Aug. 15, 2018) (same). Although the pandemic has
not stopped Immigration and Customs Enforcement from effecting removals from the United
States to Mexico, the agency does not perform deportations immediately. Mr. Soriano Cruz,
rather, can expect to wait up to two months for that process to be completed. During that time, he
will be detained, likely in ICE facilities in Louisiana or Texas, where he can anticipate
conditions that are as difficult or worse than his experience in the MDC. *See* Justice-Free Zones:
U.S. Immigration Detention Under the Trump Administration,
https://www.aclu.org/sites/default/files/field_document/justice-
free_zones_immigrant_detention_report_aclu_hrw_nijc_0.pdf at 19, 45-56 (describing
inadequate medical care, aging facilities, and reliance on solitary-like conditions in ICE jails
used for removals to Mexico).

Finally, a time-served sentence will reduce Mr. Soriano Cruz's risk that he will contract
or spread COVID-19 in Bureau of Prisons custody, where the rate of infection remains higher
than in the American public at large. *See, e.g.*, *United States v. Cohetero*, No. 19-cr-606 (SJ)
(E.D.N.Y. Apr. 30, 2020) (granting time-served sentence, where guidelines recommended 8-14
months, due to COVID-19 risks in detention). Although Mr. Soriano Cruz is not personally at
high risk for complications from the virus, every day he remains in there is a risk he will become
infected and infect others around him. Removing him from the American jail population will
reduce that risk to him, the inmates with whom he is housed, and the surrounding communities
whose members work in, and could potentially communicate the virus from, federal prison. *See*
*United States v. Torres*, --- F.3d ---, 2020 WL 2815003, at *11 (S.D.N.Y. June 1, 2020)
("Realistically, the best — perhaps the only — way to mitigate the damage and reduce the death
toll is to decrease the jail and prison population by releasing as many people as possible."
(quoting *United States v Nkanga*, --- F.Supp.3d ---, 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31,
2020))). A time-served sentence, then, is appropriate to protect Mr. Soriano Cruz's health and
that of the American community as a whole.

\*     \*     \*

Noe Angel Soriano Cruz may, on first blush, appear to present a heartland illegal reentry
case for which a guidelines sentence would be appropriate. But neither the guidelines nor the
PSR take into account the conditions of his confinement since the onset of the COVID-19
pandemic. The perpetual lockdown Soriano Cruz has experienced has been an ordeal that goes

United States v. Soriano Cruz, No. 20-cr-49 (RJD)
October 23, 2020

far beyond what is reasonably expected in pretrial detention or post-judgment incarceration. The time he has done is, simply put, harsher than what the guidelines presuppose.

In light of Mr. Soriano Cruz's conditions of confinement during the pandemic, we respectfully request that the Court grant a downward variance and impose a sentence of time-served, which is the equivalent of nine months' imprisonment, so that he can return to his family in Mexico, where he intends to remain for good. That sentence is sufficient, but not greater than necessary, to provide a just punishment for this offense, given the punitive nature of the COVID-19 lockdown in the MDC and the additional detention Mr. Soriano Cruz will experience while awaiting removal to Mexico. Further, this sentence will provide adequate deterrence. Mr. Soriano Cruz's final memory of the United States will be the solitary-like confinement he was subjected to for more than half a year. That memory will not fade, but will dissuade him from ever embarking on a journey across the border again.

Respectfully submitted,

/s/ Benjamin Yaster
Benjamin Yaster
Federal Defenders of New York, Inc.
(646) 842-1754
*Counsel for Noe Angel Soriano Cruz*

cc:     Kayla Bensing, AUSA (via ECF)
        Frank Nikoliadis, Probation (via email)